(23 Misc. Rep. 515.)

### SOUTHACK et al. v. LANE.

(City Court of New York, General Term. May 10, 1898.)

1. REAL-ESTATE BROKERS—AGENCY—OPTIONS.

    A real-estate broker, who took an option to purchase certain real estate at a stated price, is not the agent of the owner for negotiating its sale.

2. SAME—COMPENSATION FROM BOTH PARTIES.

    A middleman, who brings the vendor and purchaser of real estate together, but does not negotiate the sale or its terms, is a broker, and may charge commissions to both parties.

Appeal from trial term.

Action by Frederick Southack and others against J. Henry Lane. From a judgment for plaintiffs, and from an order denying a new trial, defendant appealed. Affirmed.

Argued before McCARTHY, SCHUCHMAN, and O'DWYER, JJ.

Henry A. Taylor and Albert S. Bard, for appellant.

Michael H. Cardozo and Edgar J. Nathan, for respondents.

O'DWYER, J. No relation of principal and agent existed between plaintiffs and defendant. The option was for the purchase of the premises, and was not in any sense the creation of an agency. That such is the fact is proved by the following allegation of the defendant's answer: "This defendant gave to said plaintiffs an option of refusal for the purchase of said lots at the price of $180,000, which refusal was to continue for the period of two weeks." Further proof that the defendant did not understand that an agency or any relation of trust or confidence existed between him and the plaintiffs is found in his own testimony in reference to the application of Mr. Deane to secure the option. The defendant testified as follows: "It finally resulted in his [Mr. Deane's] asking for an option, and I told him if he would give me $5,000 I would give him an option. He asked for an option at $180,000, and I said if he would give me $5,000 I would give it to him." Surely, no owner of property ever dreamed of exacting payment from his agent for the sole purpose of negotiating on the principal's behalf a sale of property. The extent of the commission of 1 per cent. which the agent might possibly earn on a sale of $180,000 would be $1,800. For the purpose of earning $1,800, the defendant would now contend he expected plaintiffs to pay $5,000. Thus is it manifest that when the option was given the defendant not only consented to sell to the plaintiffs themselves, but that they could themselves retain any profit they might realize over the fixed price. It is thus shown by the words of the defendant himself that the transaction in question was somewhat unusual, and that the plaintiffs acted not as confidential agents dealing with their principal, but as brokers acting on their own behalf with the right to enforce an option against the defendant in any way they saw fit. It is obvious that this defendant did not expect the exercise of any skill, judgment, or discretion from the plaintiffs, but released the latter from the slightest obligation to him. If the plaintiffs owed any such duty by reason of the fact that they had the property on their books for sale a year previous,

that duty did not continue after the option was given. The defendant, in his answer, alleges: "Before the expiration of the said period—two weeks—further negotiations between the said plaintiffs and this defendant resulted in the making of a contract of sale between this defendant and the said William R. Rose for the sale of the said premises at the price of $176,000, and this defendant agreed to pay to said plaintiffs a commission of one-half of one per cent. on $175,000, a part of such price." Taking the defendant's own concession, it thus appears that the only negotiation subsequent to the giving of the option was the transaction in the office of Rose & Putzel.

There is no doubt but that the plaintiffs, in bringing the principals together, acted with strict propriety. There was no suggestion in the evidence that Rose & Putzel would have paid more than $175,000, and they had never made an offer exceeding $170,000. The defendant stood firm at $180,000. The plaintiffs, as middlemen, saw no way of consummating a sale except to introduce the parties, and let them make their own bargain then and there. The plaintiffs did not use the option with profit to themselves, as of right they could; and, the option not having expired, it cannot be contended that the defendant relied upon them to disclose any fact, or to guide him in any way. The defendant did not employ them as his agents to sell, but, on the contrary, he expressly gave them the right to buy themselves or in the name of another, and reap any profit. That the plaintiffs did render valuable services to the defendant cannot be questioned; but it may be that the defendant could have made the contract with Mr. Rose without subjecting himself to legal liability for the payment of any commissions. But that is not the case. The defendant made a special arrangement to pay.

The term "broker" is properly applied to a middleman, and the complaint correctly alleges the facts. In 2 Am. & Eng. Enc. Law, p. 571, under "Brokers" it is said: "The term 'broker,' in its largest sense, is applied to a specialist who acts as the medium of negotiating and contracting any kind of a bargain." And again in the same volume (page 589): "Where he acts simply as a middleman to bring the parties together, and takes no part whatever in the negotiations, there will be nothing illegal in his acting for both parties, and claiming remuneration from each." In Story on Agency (9th Ed. § 38), it is said: "Properly speaking, a broker is a mere negotiator between the other parties, and he never acts in his own name, but in the name of those who employ him. * * * He is strictly, therefore, a middleman or intermediate negotiator between the parties." The same learned author, at section 31, note 2, adds: "Real-estate brokers, merely employed as middlemen to bring purchasers together to enable them to make their own bargain, are not agents to buy and sell, and may charge commissions to both parties." To the same effect is the case of Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207, opinion White, J., at page 657, 155 U. S., and at page 209, 15 Sup. Ct.

The judgment and order appealed from should be affirmed, with costs. All concur.