WADDINGHAM'S EXECUTORS, Appellants, *v.* LOKER, DEAN *et al.*, Respondents.

1. *Equity — Conveyances, fraudulent — Secret trusts.*— The law will not permit a man to withdraw his property from his [creditors. Nor can a man owing debts be permitted to devote his capital, industry, or credit to the accumulation of property to be held by some third person, for his own use or that of his family, to the exclusion of his creditors. In all such cases the law intervenes and goes behind the fraudulent and secret transactions, and subjects the property or trust funds to the payment of just and legal demands.

2. *Equity — Voluntary trusts — Creditors — Agency.*— In a suit to subject certain stocks held by the widow and children of A. to the payment of his obligations, the mere fact that at his solicitation B. had purchased and held the same for the benefit of A.'s family, and that, as agent for B., A. had examined the books of the company and looked after the general management of the stocks, and, in his capacity as agent, had deposited dividends arising from the stocks, will not make such stocks liable for his debts, if it further appears that the stocks were not procured with his money or credit, and that he had no ownership or control of it except as agent of B.

3. *Equity — Fraud, what circumstances sufficient to establish — Evidence.*— In the examination of questions of fraud, courts will look into all the circumstances; and while express and positive proof is not required, yet mere suspicion, leading to no certain results, will not be deemed sufficient ground to establish fraud.

*Appeal from St. Louis Circuit Court.*

*Cline, Jamison & Day,* for appellants.

*Thomas T. Gantt,* for respondents.

WAGNER, Judge, delivered the opinion of the court.

Plaintiffs filed their petition in the Circuit Court, the general object and purpose of which was to subject certain stocks held by the widow and daughters of George W. Jencks to the payment of debts owing by him. The petition set out and described a judgment rendered in favor of Waddingham against Jencks while both were living, a revival of that judgment, partial payments, and the death of both parties; and proceeded to state, as ground of relief and for equitable interposition, that the stock in question had been originally purchased with the money and means of Jencks, and given to his wife and daughter, in fraud of the rights of his creditors.

The answer denied that the stock was in any manner, or in any sense or degree, purchased or acquired by the means or credit of Jencks. It sets forth the whole history of the purchase of the stock and the circumstances attending it. It states that when the Transfer Company was formed, the stock of which is in controversy in this suit, Jencks was an employee of the Ohio and Mississippi Railroad Company; that he suggested to the defendant Loker, who was an old and intimate friend, that the stock of the company afforded an excellent opportunity for good investment, and that it could not fail to be profitable; that Jencks urged Loker to subscribe on his own account to the stock, and also urged him to take a number of shares for the benefit of the wife and daughters of Jencks, assuring him that in his judgment the only money he would have to pay on account of the subscription for the wife and daughters of Jencks would be the first installment, that the dividends would speedily pay off the residue of the subscription and make the stock good, and refund to Loker the money he was requested to advance. The proposition was to make the last subscription in the name of "Geo. H. Loker, trustee;" to hold the stock in his own name, as security, until he was fully reimbursed, and then to transfer it to the wife and daughters of Jencks. Loker was a banker and possessed of wealth, and was about using his means for the improvement of his real estate, and he regarded Jencks' proposals as visionary, and refused to accede to them. Jencks was wholly insolvent, and supported his family on a salary which he received from the railroad company. At last, owing to the importunity of Jencks, and his evident distress at the penniless condition in which his family would be placed in the event of his death, Loker, on account of personal friendship, was induced to take the risk of making a subscription in his own name, as trustee, and to advance the cash payment; if the adventure was unsuccessful, to sell with as little loss as possible; and if Jencks' anticipations were realized, then, after paying himself and ten per cent. interest, to transfer the stock to Mrs. Jencks and her daughters. He subscribed accordingly for fifty shares, nominally valued at $5,000, and advanced in cash, as a first payment, $2,000. The stock proved extraordinarily

remunerative. The dividends first canceled Loker's stock note for the deferred payment, then reimbursed him his cash installment and interest, and continued so profitable that the company expanded the stock, and what was originally fifty shares grew into five hundred, and still continued to pay handsome dividends. In process of time the two daughters of Jencks were married, and Loker thereupon conveyed two hundred of the shares to each of the daughters respectively, and the remaining one hundred shares to Mrs. Jencks, the widow. At the hearing in the court below, the bill was dismissed as containing no equity, and the plaintiffs have appealed. A large mass of evidence was introduced, and, after a careful perusal of it, I must say that the transaction, as narrated in the answer, seems to be well sustained by the proofs. It is a rule well known and established that the law will not permit a man to withdraw his property from his creditors. Justice must prevail before generosity. Nor can a man owing debts be permitted to devote his capital, industry, or credit to the accumulation of property to be held by some third person, for his own use or that of his family, to the exclusion of his creditors. In all such cases the law intervenes and goes behind the fraudulent and secret transactions, and subjects the property or trust funds to the payment of just and legal demands. Did the evidence show that Jencks merely applied to Loker to subscribe for the stock, for the purpose of having it placed in his name, as a cover for fraud, while Jencks furnished the money to pay for the same, and retained a secret use, there would be no difficulty in reaching the stock and making it liable for Jencks' debts. But the testimony of Loker is decisive, and stands uncontradicted, that the stock was not procured either with the money or credit of Jencks. It plainly appears that Jencks had no ownership in it ; nor had he any control over it, only so far as Loker chose to invest him with that control. Jencks did attend the meetings of the board of directors, and attended to the management of the stock, but it was because he was lawfully authorized thereto by written power of attorney from Loker, and afterward as the duly accredited agent of his daughters. No creditor of Jencks suffered to the amount of a farthing in consequence of the purchase of the stock ; for neither

his money, credit, nor labor contributed in the slightest degree toward its acquisition.   It is not shown that Jencks made any promise to Loker to be responsible or to reimburse him, and it is unquestionably evident that Loker did not act from any notion of Jencks' responsibility, for Jencks was a ruined man, hopelessly insolvent, and barely able to make a subsistence for his family. That his views were consulted, and to a certain extent deferred to, may be admitted; but they were only advisory, and had no binding effect upon Loker.   The assumption that he assumed ownership of the stock, and had absolute power over and could require Loker to make such disposition of it as he desired, is unfounded; for Loker states emphatically that had Jencks applied to have the stock transferred to him he would not have complied with the request, and that in the distribution that was made of the stock Jencks had no hand in the matter, but that it was exclusively his own work.   The subscription of the stock by Loker was purely voluntary, made from generous motives, as an act of friendship; and had the adventure miscarried or proved unsuccessful, he would have had no legal recourse on Jencks to make good his loss.   So, after it was a success, and turned out to be an almost unexampled speculation, when we take into account the smallness of the investment, had Loker seen proper to hold on to the stock as his private property, there is nothing disclosed which would have prevented him from doing so.   No consideration had passed to him, and there was nothing on which to base a legal obligation.   It is apparent that he was bound in the forum of conscience, but the law does not enforce mere moral or ethical duties.   Had he suffered his avarice to override his acts of generosity, and committed such a wrong, he would have branded himself as a dishonored and dishonest man, but it could hardly be said that he would have incurred any legal liability. Perhaps he deserves no credit for acting honestly, but it would be a great and grievous wrong to turn his bounty from its just and rightful recipients and place it in the hands of strangers. There is nothing in the case which in the least militates against or impairs the view here taken.

The acts of Jencks in examining the books and watching the

general management of the stock are entirely consistent with his character of agent and attorney. Much stress is laid upon the fact of his depositing large sums of money, which it is argued arose out of dividends, and that he used this money as his own. How he used this money I do not know, nor does the record enable me to form an opinion. It is shown that the deposits were made in his name as agent, and, if he did use it, I am unable to see that the plaintiffs had any particular concern in it. Loker and the beneficiaries of the stock might have complained, but if they made no objection the plaintiffs could not do it for them.

It is also contended that the stock ought to be subjected to the payment of the debt by virtue of the doctrine of powers; that where a debtor, having a general power to appoint property which he never owned, exercises that power in favor of volunteers, the property in the hands of such volunteers is burdened with the debts of the appointor if it be necessary for the satisfaction of them. But here it does not appear that Jencks had any power of appointment; the evidence is expressly to the contrary. In the examination of questions of fraud, courts will look into all the circumstances; and while express and positive proof is not required, yet mere suspicion, leading to no certain results, will not be deemed sufficient ground to establish fraud. If there was anything to impugn or impeach the fairness of the transaction, the evidence most signally fails to show it. After a review of the whole case, I have not seen anything that did not consist with perfect fairness and honesty.

Judgment affirmed. The other judges concur.