# NEW ENGLAND LOAN AND TRUST COMPANY et al. v. BROWNE et al., Appellants.

### Division Two, November 17, 1903.

1. **Fraud and Collusion:** PRESUMPTION. Fraud and collusion will not be presumed, and the burden is on the party charging them to reasonably satisfy the chancellor that they exist.

2. ————: HOW ESTABLISHED. Collusion or fraud is seldom susceptible of positive or direct proof, and in determining whether or not it exists the chancellor has the right and it is his duty to consider the entire surroundings of the transaction, the relationship and conduct of the parties, and then make such reasonable inferences as all the facts warrant.

3. **Equity Cases:** DUTY OF APPELLATE COURT. It is the duty of the appellate court in an equity case to supervise the decree of the trial court for the purpose of ascertaining whether or not that decree is in keeping with good conscience and justice.

4. ————: ————: DEFERENCE TO TRIAL COURT. While it is the duty of the appellate court to supervise the judgment of the trial court in an equity case, yet that does not mean that the trial court should be absolutely ignored, but such due and appropriate consideration should be given to the findings of the trial court as they are entitled to.

5. **Purchase of Tax Deed by Mortgagor's Brother.** The maker of a deed of trust agreed therein "to pay, before the same became delinquent, all taxes and assessments upon said premises, general and special, now existing or that may hereafter be levied," but failed to pay the city taxes for a certain year, and thereupon the said premises were put up and sold for such delinquent taxes, and at such sale the agent of the mortgagee bought them in the name of the mortgagee, and through an error the mortgagee's secretary indorsed on the tax certificate bought at the sale the mortgagee's name "without recourse," and the agent delivered it to a bank to secure an indebtedness of said agent, and said bank sold it to a third party, and that third party sold it for about $60 above the taxes and cost to a brother of the mortgagor, indorsing his name thereon in blank, and said brother filled in the blank with his own name, and obtained a tax deed for the premises from the city treasurer. The two brothers were partners in business, doing business in the same office, and lived together in a house on the prem-

ises, the purchaser of the certificate paying board to the mortgagor at the rate of $15 per month. After he obtained the deed, there was no change in their relations except that the mortgagor did not charge the purchaser of the certificate any board for three months and paid him $15 when he went away, in all about $60, and since that time no rents were charged or paid. The purchaser was not in the habit of dealing in tax certificates, and at the time he purchased this in blank stated he wanted it for a friend. *Held,* that he purchased the tax certificate and obtained the tax deed for which it called, for the benefit of his brother, the mortgagor, and that the tax deed must be set aside and. for .naught held.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*Daniel W. Brown* for appellant.

(1) Appellant complains of the decree of the court for the reason that it is not supported by the evidence in this case, and is erroneous. As there was no claim, or attempt to prove by respondents that John Browne knew, or had reason to believe, that plaintiff company had mistakenly assigned the certificate of purchase, it is right to assume that he believed that the New England Loan and Trust Company had voluntarily and intentionally assigned it, and if it did, he as well as any other person had the right to purchase the certificate and take a deed under it. It is true he could not purchase it for his brother who had purchased the real estate subject to plaintiff's mortgage, and it is equally true that plaintiffs could not have taken a deed under the certificate in fraud of defendant William H. Browne's right, who stood in the light of a mortgagor, having purchased the property subject to plaintiffs' mortgage. There is nothing inequitable, improper or unreasonable about John Browne's purchase of the certificate which was legally issued and legally assigned by plaintiffs, and reassigned until it had passed into the hands of a

third party, and admittedly a bona fide purchaser. It must be presumed from the evidence in the record that either the plaintiff, New England Loan and Trust Company, had taken the certificate of purchase and assigned it with intent to indirectly procure a deed thereon, and thus cut out the equity of William H. Browne, with whom they were in litigation over the mortgage on the property, or that the plaintiffs were grossly careless and indifferent to their interests and their duty. (2) It was overlooked by the honorable court below, that the burden of proof is upon the party alleging the fraud, and that fraud must be shown by evidence. Jackson v. Wood, 88 Mo. 76. Courts are not to suspect fraud; it must be proved. Caldwell v. Smith, 88 Mo. 44; Priest v. Way, 87 Mo. 16. In the face of the law that the burden of proof was upon the plaintiffs, and that they should have proved their case by clear and distinct evidence, can it be justly held that John Browne took the tax deed for the use and benefit of his brother, and in fraud of the plaintiffs? If this decree can be upheld, in what manner could John Browne prove that he took the deed for himself and not for his brother? The nature of the case is not susceptible of other proof on the part of defendant, John Browne, than that he has made, viz., his own word, under oath, the testimony of his brother denying knowledge of any understanding that the deed was taken for him, the testimony of John Browne's agent, Andrew Gallagher, showing that he acted for John Browne and not for William H. Browne, the payment of his own money for the certificate of purchase, and finally, taking the tax deed in his own name. If all of this testimony is to be overthrown by the single circumstance that defendants were brothers, and lived in the same house, and had spoken together of the certificate, there could be but one conclusion, viz., that John Browne was precluded from the right to purchase and hold the certificate and deed because he was a brother of William H. Browne. The

presumption is always against fraud; fraud must be proved and the burden of proof is on the party alleging it.  Shoe Co. v. Casebier, 53 Mo. App. 640; Jackson v. Wood, 88 Mo. 76; Thrasher v. Green Co., 105 Mo. 244; 1 Greenleaf on Evidence (14 Ed.), secs. 14, 20, 34, 35 and 80.  (3)  This transaction of John Browne's consists more with honest and fair dealing than with a fraudulent purpose, and should be referred to the better motive.  Garesche v. McDonald, 103 Mo. 1; Robinson v. Dryden, 118 Mo. 534.  He certainly was entitled to the legal right to purchase the certificate and take a tax deed thereunder, and enjoy the profit of the transaction as much as any other citizen; and the act was perfectly consistent and reasonable, and the court below erred in assuming that he took the deed for the use and benefit of his brother; for, while the burden of proof was upon plaintiffs, the preponderance of the testimony was with the defendants.

*Flower, Peters & Bowersock* and *Botsford, Deatherage & Young* for respondents.

(1)  A mortgagor, or one claiming title under him, can not take out a tax deed against the mortgagee. Fuller v. Hogdon, 25 Me. 243; Porter v. Lafferty, 33 Ia. 254; Stears v. Hollenbeck, 38 Ia. 550; Fair v. Brown, 40 Ia. 209; Dayton v. Rice, 47 Ia. 429; Avery v. Judd, 21 Wis. 262; Ins. Co. v. Patton, 98 Ind. 209; Kezer v. Clifford, 59 N. H. 208; Montgomery v. Whitfield, 6 So. 224; Boyd v. Allen, 15 Lea (Tenn.) 81; Childers v. Shantz, 120 Mo. 305.  And it makes no difference that the tax deed is taken out indirectly or in the name of another person.  McAlpine v. Zitzer, 119 Ill. 273; Frank v. Arnold, 35 N. W. 453.  An assignee of a tax certificate is in no better position than the original holder. Frye v. Bank, 11 Ill. 367; Cooper v. Jackson, 99 Ind. 566; Ellison v. Armstrong, 28 Minn. 276; Leppo v. Gilbert, 26 Kan. 138.  Some authorities also hold that

the same restriction applies to mortgagees.  Brown v. Simons, 44 N. H. 475; Woodbury v. Swan, 59 N. H. 22; Moore v. Titman, 44 Ill. 367; Ins. Co. v. Bulte, 45 Mich. 113; Maxfield v. Willey, 46 Mich. 252.  But there is a difference of opinion on this latter point.  Williams v. Townsend, 31 N. Y. 411; Waterson v. Devoe, 18 Kan. 223.  (2) The Supreme Court will defer to the findings of the trial court on a matter of fact even in equity cases, and will not reverse such finding in case of doubt. Snell v. Harrison, 83 Mo. 651; Mathias v. O'Neil, 94 Mo. 520; Jamison v. Bagot, 106 Mo. 240; Parker v. Roberts, 116 Mo. 657; Lins v. Lenhardt, 127 Mo. 271; Short v. Taylor, 137 Mo. 517.  (3) The decree of the trial court is amply supported by the evidence.  (4) The tax certificate, having been indorsed by the plaintiff company by mutual mistake or through the fraud of Sexton, equity will cancel such indorsement and the tax deed taken out on the strength thereof on re-payment by the plaintiff company of the damages caused by said mistake.  Light v. West, 42 Ia. 138; Besore v. Dosh, 43 Ia. 211; Singer Manf. Co. v. Yarger, 12 Fed. 487; Horn v. Garry, 49 Wis. 464.  (5) The blank indorsement of the name of the plaintiff by its assistant secretary on the back of the tax certificate in question was insufficient as an assignment of the certificate.  White v. Brooklyn, 122 N. Y. 53; Territory v. Perea, 30 Pac. 928; Horn v. Garry, 49 Wis. 464.  (6) Equity has jurisdiction in these cases.  Ins. Co. v. Smith, 117 Mo. 262; Slater v. Manwell, 6 Wall. 276; Miller v. Cook, 25 N. E. 756; Sneathen v. Sneathen, 104 Mo. 201.

STATEMENT.

"This is a suit in equity to set aside and annul a tax deed.  The petition was filed on the 23d day of November, 1897, in the circuit court of Jackson county, Missouri, and alleged in substance, that on the 27th day of May, 1889, Mina R. Sexton and husband gave a

deed of trust to plaintiff John C. Hall in favor of the plaintiff New England Loan & Trust Company, covering the land in controversy, lots 25 and 26, block 7, in Jersey Heights, an addition to the City of Kansas, Missouri, to secure their note for $1,800; that said note and deed of trust were still owned and held by said company, and were wholly unpaid; that on the 10th day of May, 1892, the defendant William H. Browne became the owner of said land subject to said deed of trust, and that as part of the consideration for said land said Browne assumed and agreed to pay said note and deed of trust; that said Browne had ever since owned said land and been in possession thereof; that under said deed of trust it was the duty of said Browne to pay the taxes levied against said land, but that notwithstanding said duty, said Browne failed to pay the city taxes of Kansas City levied for the year 1895, and that said land was put up and sold in the month of November, 1895, for said delinquent taxes; that at said sale Warren B. Sexton acted for the plaintiff company in buying in properties on which said plaintiff held deeds of trust, and at said sale bought in the property in controversy in the name of said plaintiff company; that through an error on the part of said Sexton and the assistant secretary of said plaintiff the tax certificate purchased at said sale was indorsed 'without recourse, New England Loan & Trust Company, by J. S. Gilbert, A. Sec'y,' and delivered to said Sexton; that said Sexton delivered said certificate so indorsed in blank to The Missouri National Bank in January, 1896, to secure an indebtedness of his to said bank; that afterwards said bank sold said certificate to one F. N. Phelps, who filled his own name into said blank indorsement; that on the 4th day of November, 1897, said Phelps delivered said certificate to defendant John Browne, indorsing thereon, 'For value received I, this 4th day of November, 1897, assign the within certificate

Vol 177 mo—27

to ————, without recourse, F. N. Phelps;' that there-after, said John Browne filled his name in the blank in said indorsement; that, except as above, there were no assignments of said certificate; that on the 5th day of November, 1897, said John Browne obtained a tax deed to said land from the city treasurer; that said John Browne is a brother of defendant William H. Browne, and that they have for years done business together in the same office, and resided together as members of the same family in a house situated on said land; that said John Browne obtained said certificate and said tax deed for the use and benefit of his brother William H. Browne, and that the obtaining by said John Browne of said certificate and said tax deed was in fraud of the rights of plaintiffs; that said William H. Browne is insolvent.   The petition closed with an offer to pay John Browne such sum as the court might decree to be proper, and a prayer for a decree that said tax deed was null and void, and for general relief.

"Separate demurrers were filed and overruled, after which William H. Browne filed a general denial. John Browne filed an answer denying all allegations not admitted, and admitting that William H. Browne purchased the property on the 10th day of May, 1892, and that said William H. Browne failed to pay the city taxes of 1895, and that said property was sold for said taxes to the plaintiff company; that said plaintiff in-dorsed its name on the back of the tax certificate and delivered it to said Sexton, and that by the other above-mentioned assignments it became the property of this defendant John Browne; that on the 5th day of Novem-ber, 1897, a tax deed was issued to this defendant for said property, and duly recorded.   A reply was filed denying all new matter in this answer.

"On the trial of the case evidence was introduced by both sides, and the court, after consideration thereof, found the issues in favor of the plaintiffs; that the mat-

ters and statements in the petition were true; that the purchase of the tax certificate by John Browne and the taking out of a tax deed by him were for the use and benefit of William H. Browne; that in the purchase of said certificate and taking out of said deed said John Browne and William H. Browne acted together in collusion and in fraud of the rights of plaintiffs, and that said certificate and deed were null and void as to said plaintiffs. The court, therefore, decreed that the certificate and deed be cancelled and adjudged null and void and of no effect, and that the defendants, John Browne and William H. Browne, be enjoined from claiming under said certificate and deed and from transferring the same to a third person, and that said defendants pay the costs. Motions in arrest of judgment and for a new trial were made by defendant, John Browne, and overruled by the court, whereupon said John Browne appealed to this court.

"Several errors are assigned by appellant in general terms, but only two are urged, and they practically cover all: First, that the decree of the court below is not supported by the evidence; second, that the decree should have provided for the re-payment to defendant, John Browne, of the amount paid by him for the tax deed.

"The evidence substantially indicates that from May 10, 1892, to November 5, 1897, and afterwards, William H. Browne owned the property in controversy, subject to the deed of trust held by the plaintiff company; that he had assumed and agreed to pay said deed of trust, which provided that the party of the first part should 'pay, before the same became delinquent, all taxes and assessments upon said premises, general or special, now existing or that may hereafter be levied;' that said William H. Browne failed to pay the city taxes for the year 1895, and that in November, 1895, said property was sold for said delinquent taxes, and the tax certificate was bought for the plaintiff com-

pany; that said certificate was accidentally assigned by said company and came into the hands of F. N. Phelps, who held the same until the fall of 1897; that in November, 1897, said Phelps transferred said certificate to the defendant, John Browne, receiving therefor, between $60 and $70, including a bonus paid by said John Browne; that said John Browne took out a tax deed November 5, 1897; that the two Brownes were brothers and were occupying the same offices as partners in the real estate business and never kept any accounts between themselves, and had lived together in the house on the premises in controversy for several years, and continued to live together until two or three months after this suit was started, when John Browne moved away and left William H. Browne in possession; that said William H. Browne was insolvent; that up to November, 1897, said John Browne had paid board to William H. Browne at the rate of $15 per month, and that after the purchase of said tax certificate by said John Browne he paid no board for three months, and then moved out and was paid $15 in cash, making in all $60 paid or credited by William H. Browne to John Browne, as claimed for rent; that the possession of William H. Browne was never disturbed in any way; that John Browne did not deal in tax certificates or deeds and this was his only transaction in them; that William H. Browne and John Browne had discussed the matter often previously to transfer to John Browne, and that the latter knew of the outstanding deed of trust and that his brother was under obligation to pay those taxes; that there was litigation pending of which said John Browne knew, concerning the foreclosure of this deed of trust, which was being fought by said William H. Browne, although the deed of trust and the title of William H. Browne were both cut out by the tax deed, if valid, and which litigation said William H. Browne declared he intended to prosecute to completion.''

In addition to this, it was developed that an eject-

ment suit was then pending between appellants and respondent, William Browne, and that William Browne testified very positively that not only had he not notified the plaintiffs in that case that he had no more interest in the property, but asserted that he expected to continue the contest for this property.

Phelps also testified that his best impression was that Gallagher told him, at the time of the purchase and assignment of the tax certificate, that John Browne wanted it for a friend of his.

Upon the submission of this cause to the court, upon all the evidence introduced by the parties to this action, the court found the issues for the plaintiffs and caused to be entered the following decree:

"Now at this day come the said parties, plaintiffs and defendants, by their respective attorneys, this cause coming on for hearing and trial, the court doth take up the same for hearing and trial, and all and singular the premises being seen and heard, the cause being submitted to the court, the court finds the issues for the plaintiffs and that the matters and statements set forth in the petition of plaintiffs are true, and that the purchase by defendant, John Browne, of the certificate of purchase mentioned and described in the petition herein, which was issued to plaintiffs by the city treasurer of Kansas City on the 12th day of November, A. D. 1895, for the city taxes of said last year due the City of Kansas City on lot No. twenty-five and the west one hundred and twenty-three and five-hundredths feet of lots twenty-six and twenty-seven, of block seven, of Jersey Heights, an addition to said city, and acknowledged by said city treasurer on the 27th day of November, 1895, and recorded on January 20, 1896, in Book B. No. 613, at page 365, of the land records in the office of the recorder of deeds of said Jackson county, at Kansas City, Missouri, and that the taking by said defendant John Browne of the tax deed described and

recited in plaintiffs' petition, dated the 5th day of November, 1897, executed by John J. Green as city treasurer, and by him acknowledged on said 5th day of November, 1897, and recorded on said last day in the land records of said county at Kansas City, in the office of the recorder of deeds, in Book B. 652, at page 538, and following, and conveying to said defendant, John Browne, lot twenty-five and the west one hundred and twenty-three and five one-hundredths feet of lots twenty-six and twenty-seven, in block 7, of Jersey Heights, an addition to said city, were made and taken by said defendant, William H. Browne, and that in the taking and acquiring of said certificate of purchase and said tax deed by said defendant, John Browne, he and his co-defendant, William H. Browne, acted together in collusion and in fraud of the rights of these plaintiffs, and that said certificate of purchase and tax deed so taken and obtained by said defendant John Browne are null and void as to these plaintiffs. It is therefore considered, ordered, adjudged and decreed by the court that said certificate of purchase and said tax deed be and the same are hereby cancelled and adjudged to be null and void and of no effect whatever, and said defendants, William H. Browne and John Browne, and each of them, are hereby perpetually enjoined and restrained from claiming either under said certificate or said tax deed, and from transferring the same to any third person, and that said defendants pay the costs of this suit, and that plaintiffs have execution therefor.''

FOX, J.—As was said by the distinguished judge in the case of Lins v. Lenhardt, 127 Mo. 271, ''This cause is, to a large extent, a fact case.'' As to the jurisdiction of the court, the appropriateness of the decree, so far as disclosed by appellants' brief, is not controverted, if the facts as indicated by the record warranted the finding of the trial court.

There appears to be no dispute as to legal propo-

sitions, so ably and fully presented by counsel for respondents; at least, after taking leave to file a reply brief, we find none presented. Hence, we will not burden this opinion with a review of the authorities cited by respondents' counsel; but will content ourselves by giving attention to what seems to be the only disputed question: Was the testimony sufficient to warrant the decree as herein indicated?

. We fully recognize the rule as urged by appellants, that fraud and collusion between the appellants will not be presumed, and the burden was upon the respondents, in the trial court, to reasonably satisfy the chancellor that they existed.

We also fully recognize the duty of appellate courts, in equity cases, to supervise the decrees of the trial court, to the end that they may ascertain that its judgment is clearly in keeping with good conscience and justice.

There is also another rule, equally well settled, in respect to the deference paid to the finding of the chancellor. While this latter rule should not interfere with the power of the appellate court, to supervise the judgment of the trial court, and occasion this court to lessen its strictness in scrutinizing the findings of the chancellor, yet the action of the trial court should not be absolutely ignored; but that due and appropriate consideration should be given to such findings to which they are entitled, under the well settled rules, as announced by this court.

In the case of Snell v. Harrison, 83 Mo. 651, in respect to this rule, the court said: "It is well settled in this State, that the finding of the chancellor will be deferred to by this court, unless he has manifestly disregarded the evidence."

SHERWOOD, J., in the case of Mathias v. O'Neill, 94 Mo. l. c. 530, very emphatically announced the custom of this court. He said: "If the evidence were more evenly balanced, the custom of this court to defer some-

what to the trial court in matters of fact, where the advantages of the latter tribunal are so great in regard to observing the manner and demeanor of the witnesses, would lead us to concur in the conclusion reached by that court, unless some cogent reason should lead us to depart from our usual way.''

To the same effect is the announcement in the case of Jamison v. Bagot, 106 Mo. 240. It is there said by this court: ''We ought to defer somewhat to the finding of the court below, even if the fact was in some degree in doubt as to how it ought to be decided.''

It was also said in the case of Parker v. Roberts, 116 Mo. l. c. 667: ''It is the well settled rule of practice in this court in equity cases that while the conclusions of fact drawn by the trial court from the evidence are not taken as conclusive, but will be reviewed and reversed if thought to be erroneous, still much deference is given to their findings on account of the superior advantages they possess for weighing the evidence and judging of the credibility of the witnesses.''

This rule is very aptly stated by BARCLAY, J., in Short v. Taylor, 137 Mo. l. c. 525: He said: ''This court has constitutional power to review the facts as well as the law in a suit in equity, triable by the court. [Hunter v. Whitehead, 42 Mo. 524.] But we should be satisfied, in a case turning on the credibility of persons who appeared at the trial, that the preponderance of evidence is against the result reached on the circuit before we announce a different one here.''

In the cases cited, the rule is very positively announced, as well as the reasons upon which it is based.

The circuit court, doubtless, in reaching its conclusion in this case, took into consideration the relationship of the appellants. Not only this, but also, as the evidence discloses, the intimacy and harmony existing between the two brothers; the fact that their relations were such, in financial deals, that they kept no accounts, their absolute reliance upon the integrity of each other.

The chancellor took the rational view, that appellant, John Browne, was not in the habit of dealing in tax certificates, that the brotherly affection furnished the mainspring of his solicitude to secure this tax certificate. They were partners in the real estate business; lived for a long time upon this property; and there was no change in the condition of things after the purchase of the certificate. In addition, to this, the conclusion of the chancellor, that appellant, John Browne, was not acting the part of an entire stranger, and independent purchaser of this certificate, is emphasized by the testimony of Phelps, an absolutely disinterested witness, that at the time of the sale of the certificate, Gallagher said Browne wanted it for some friend.

The respondents held a mortgage on this property occupied by William Browne. It in terms, provided he should assume the burden of paying all the taxes. In law, as well as in equity, and good conscience, it was his duty to comply with this undertaking. His brother, the principal contesting appellant in this case, had full knowledge of these facts. Was it an illogical or unwarranted conclusion that he was, in this transaction, not acting independently for himself, as he says, for an investment, but in collusion with and for the protection of his brother, who unhesitatingly says that he expects to continue the legal contest for this property? While, as a matter of law, the court could not presume such collusion, yet it must be noted that collusion or fraud is seldom susceptible of positive or direct proof; and it is indisputable, in determining such questions, the chancellor has the right and it is his duty, to carefully consider the entire surroundings of the transaction, the relationship and conduct of the parties, and then make such reasonable inferences as all the facts warrant and justify. Not only a brother, but a full partner in dealing in real estate, the brother deeply interested in valuable property, living in the same house upon the premises in dispute, occupying the same

business office, frequently discussing the situation in respect to this property, keeping no accounts between each other, sixty or seventy dollars required to relieve a burden, which under the deed of trust, rested upon the brother William, the brother John Browne furnishes this sum of money, and secures an assignment in blank of the tax certificate, afterwards his name is inserted as the assignee—what would be the natural inference from such a state of facts, considered in connection with the other circumstances surrounding the transaction? We have reached the conclusion that the decree as rendered by the trial court answers the inquiry.

The record discloses that William H. and John, Browne spoke of the board of the latter being applied to the payment of rent; but the record is absolutely silent as to any contract or even a conversation relative to the further occupancy of the property by William H. Browne. The premises were occupied as before; there were no changes whatever, not even a suggestion of a change of the conditions, subsequent to the acquiring of the tax certificate. No impartial mind can view this transaction, make all the natural and legal inferences, without reaching the conclusion that the action of John Browne was prompted by the commendable and natural influence to protect the interest of his brother in the premises in dispute, and that they acted in concert.

The trial court had the appellants before it, heard all the testimony, and reached the conclusion that while apparently John Browne released the burden of taxes upon this property, that was simply the appearance of the transaction; in reality, he was simply acting in collusion with his brother, and the burden, in fact, was released by William H. Browne, who, under his contract, had assumed that liability.

After a careful consideration of all the facts, we find no "cogent reasons" disclosed in the record, for

reversing or modifying the decree in this cause. It will be affirmed, and it is so ordered.

*Gantt, P. J.,* concurs; *Burgess, J.,* absent.