PASQUALE CASTORINA v. ARTHUR HERRMANN, Appellant.—104 S. W. (2d) 297.

Division One, April 21, 1937.

1028

*Alfred H. Kerth, Dunbar & Dubail* and *Bryan Wilson* for appellant.

*Joseph B. Catanzaro* for respondent.

HYDE, C.—This is an action in equity to set aside a deed of trust, conveying real estate in St. Louis County, to secure a $1500 note. Plaintiff alleged that this deed was wholly without consideration; that it was a fraudulent conveyance; and that it was in fact

executed after an injunction had been granted by the Circuit Court of St. Louis County (upon plaintiff's petition to set aside the fraudulent conveyance of the land, described in this deed of trust, to the maker thereof) to restrain the maker from transferring, selling, or encumbering the title to this land. The trial court found for defendant and entered judgment dismissing plaintiff's petition. At the same term, the court sustained plaintiff's motion for a new trial. Defendant has appealed from the order granting plaintiff a new trial.

■ The appeal herein was granted to the St. Louis Court of Appeals, which upon motion of both parties transferred the cause here upon the ground that title to real estate was involved. Under the prior decisions of this court such an action to declare void, and remove as a cloud upon title, a deed of trust is within the jurisdiction of this court upon that ground. [Hendrix v. Goldman (Mo.), 92 S. W. (2d) 733, and cases cited.]

■ The record herein discloses that the evidence was heard at the May Term, 1932, of the Circuit Court of St. Louis County, but that then "the cause was submitted and judgment reserved." After holding the case under advisement for over a year, judgment of dismissal was entered at the September Term, 1933. Thereafter, during this same judgment term, the court entered an order granting plaintiff a new trial, sustaining plaintiff's timely motion for new trial "on the third, fourth and fifth grounds thereof." Of course, if any of these grounds were good, we must affirm the order granting plaintiff a new trial both because the court acted during the judgment term and because plaintiff's motion was timely. ■ The fourth ground was that the court in another suit by plaintiff against the Campises, Roth and his grantee had found their conveyances to be fraudulent. That must be eliminated from consideration, because it was not a good ground for a new trial or any relief to plaintiff herein, both because defendant was not a party to that suit, and because, even if he had been, defendant's transaction with one of the parties therein could only have been avoided by a showing therein that his deed of trust was without consideration or that he was otherwise a party to the fraud of the parties involved in that case. [Sec. 3122, R. S. Mo. 1929; Hurley v. Taylor, 78 Mo. 238; Lionberger v. Baker, 88 Mo. 447; Gordon v. Ritenour, 87 Mo. 54; Craig v. Zimmerman, 87 Mo. 475; Gust v. Hoppe, 201 Mo. 293, 100 S. W. 34; Peoples Bank v. Jones, 338 Mo. 1048, 93 S. W. (2d) 903.]

■ However, because the view we take will necessitate a new trial, we think it should also be pointed out that, if defendant's deed is upheld as bona fide and valid against plaintiff, its priority would not be affected by the filing of the transcript of a judgment, obtained in a court outside of the county, against persons who did

not then hold the record title to the land. It is the purpose of Section 3122, Revised Statutes 1929, and our recording acts to protect such a mortgagee. Section 1144, Revised Statutes 1929, makes such a judgment, from the time of filing transcript, "a lien upon the real estate of the person against whom the judgment was rendered." This would make it a lien upon land fraudulently conveyed before it was filed, because as to creditors such a conveyance is made, by Section 3117, Revised Statutes 1929, "clearly and utterly void." For this reason, it is held that when land has been fraudulently conveyed the judgment creditor may resort to equity, in the first instance, to have the conveyance set aside so that it may be sold under the lien thereof free from any doubt due to such conveyance; or he may disregard the conveyance, make a levy and sale to enforce such lien, and then sue to cancel the conveyance as a cloud on his title. [Lionberger v. Baker, 88 Mo. 447; Slattery v. Jones, 96 Mo. 216, 8 S. W. 554, 9 Am. St. Rep. 344; Woodard v. Mastin, 106 Mo. 324, 17 S. W. 308; Welch v. Mann, 193 Mo. 304, 92 S. W. 98; Spindle v. Hyde, 247 Mo. 32, 152 S. W. 17; Oldham v. Wade, 273 Mo. 231, 200 S. W. 1053; Dalton v. Barron, 293 Mo. 36, 239 S. W. 97.] In such a situation, the courts favor the former course, but on either course it is necessary to resort to equity for aid because there is not a full, complete, and adequate remedy at law against fraudulent conveyances. "The very ground of (equity) jurisdiction . . . is that the property sought to be subjected to the payment of the judgments cannot be reached by legal process" (Dalton v. Barron, supra), and, in the absence of some step beyond the mere filing of such a transcript, innocent bona fide mortgagees, purchasers, or vendees, from a record owner not a party to the judgment, are protected. The question here must be whether or not defendant was such an innocent bona fide mortgagee.

The other two grounds, upon which the motion for new trial was sustained, do not go to any specific matters but are only generalities. They contain the statements that "the said findings, orders and decrees are contrary to the evidence in the case;" and that "the decree under the evidence and in equity should have been for the relief prayed for by the plaintiff." Our rule is that such general statements in a motion for new trial serve no purpose in preserving anything for appellate review. [Clay v. Owen, 338 Mo. 1061, 93 S. W. (2d) 914; Matthews v. Karnes, 320 Mo. 962, 9 S. W. (2d) 628; Bond v. Williams, 279 Mo. 215, 214 S. W. 202.] That does not mean, however, that such general statement can serve no purpose at all. [See Tabler v. Perry, 337 Mo. 154, 85 S. W. (2d) 471, and cases cited.] In our practice, a motion for new trial has a dual function. One is as to obtain relief on appeal, and *when overruled,* it only preserves for appellate review the matters of exception, which were passed upon by being stated in the motion

for a new trial. [Sec. 1061, R. S. 1929.] The other function of the motion is to obtain relief in the trial court. When the motion *is sustained* and the requested relief is granted, on reviewing such action, in considering the grounds stated in the motion upon which this action is based "this court will be more liberal in upholding the court's action." [Tabler v. Perry, 337 Mo. 154, 85 S. W. (2d) 471.] This is because the power of the trial court to grant a new trial is an exercise of its judicial discretion, which may be based upon matters known to the court (often said to be in the breast of the court) because the trial judge participated in the trial and knew what took place, much of which cannot be preserved in any bill of exceptions or record. [Beer v. Martel, 332 Mo. 53, 55 S. W. (2d) 482; In re Zartman's Adoption, 334 Mo. 237, 65 S. W. (2d) 951.] Until the amendment of Section 1018, Revised Statutes 1929, in 1891 (Laws 1891, p. 70) there was no provision for review, by appeal from such action by the trial court.

██ It is a sufficient ground for such action that the trial court believes the verdict to be against the weight of the evidence. [Forbis v. Hessing, 328 Mo. 699, 41 S. W. (2d) 378; Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S. W. (2d) 810; Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43; Vitale v. Duerbeck, 332 Mo. 1184, 62 S. W. (2d) 559.] The trial court has this power over its own findings in either law or equity cases. [Hurley v. Kennally, 186 Mo. 225, 85 S. W. 357; Wilson v. Caulfield, 228 Mo. App. 1206, 67 S. W. (2d) 761.] This power is subject to the qualification that it must not act arbitrarily or without notice to the parties. [In re Zartman's Adoption, 334 Mo. 237, 65 S. W. (2d) 951.] To grant a new trial, on the ground that the finding was against the weight of the evidence, would be arbitrary if there was no evidence to weigh. Therefore, on appeal from such an order based on that ground, the appellate court will determine whether or not there was sufficient substantial evidence to sustain a verdict for the party to whom the new trial was granted. [Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43; Davis v. Johnson, 332 Mo. 417, 58 S. W. (2d) 746; Security Bank v. National Surety Co., 333 Mo. 340, 62 S. W. (2d) 708; United Construction Co. v. City of St. Louis, 334 Mo. 1006, 69 S. W. (2d) 639.] ██ Since "we have uniformly ruled, however, that as our statute (Mo. St. Ann., sec. 1003, p. 1269) required the trial court to specify the grounds on which a new trial is granted, when it does so specify the particular grounds the presumption is that all the grounds not so specified are overruled." [Tabler v. Perry, supra; Sakowski v. Baird, 334 Mo. 951, 69 S. W. (2d) 649.] For that reason, the trial court is presumed to have decided that the verdict is not against the weight of the evidence when another ground for granting a new trial is specified in its order (Gardner v. St. Louis Union Trust Co. (Mo.), 85 S. W. (2d)

86); and, unless the order granting a new trial can be construed to show the court intended to grant it because it had determined that the verdict was against the weight of the evidence, its action will not be sustained on that ground.

■ Does it appear that the court granted the new trial herein because it decided that its finding was against ·the weight of ·the evidence? If so, its order must be sustained if there is substantial evidence upon which a finding for plaintiff could be upheld if made. We hold that the grounds stated in the order are sufficient to show that the court did consider its finding to be against the weight of the evidence. Since the court decided that its "findings, orders and decrees *are contrary to the evidence* in the case" and that its "decree under the evidence and in equity should have ·been for the relief prayed for by the plaintiff," it would seem to be the reasonable construction of such language that it meant its findings were against the weight of the evidence. [Van Liew v. Beverage Co., 144 Mo. 509, 46 S. W. 202; Somerville v. Stockton, 178 Mo. 121, 77 S. W. 298; Carnie v. Toll (Mo.), 281 S. W. 41; Herschel v. Orpheum Theater ·Co., 330 Mo. 581, 48 S. W. (2d) 108; Stegner v. M.-K.-T. Railroad Co., 333 Mo. 1182, 64 S. W. (2d) 691; for language which will not be so construed, see Gates v. Nichols' Sanatorium, 331 Mo. 754, 55 S. W. (2d) 424.] We rule that the trial court did grant the new trial on this ground and will, therefore, determine whether there is any substantial evidence to show that the deed of trust to defendant was made for a fraudulent purpose and that he participated in the fraud.

■ Arranged chronologically, the various transactions prior to this suit were, as follows:

In October, 1929, plaintiff here instituted a suit in the justice of the peace court in the city of St. Louis against Joe and Caterina Campise.

December 4, 1929, plaintiff obtained a judgment in the justice of the peace court in the city of St. Louis against Joe and Caterina Campise.

December 7, 1929, a deed dated November 26, 1929, was recorded in the office of the recorder of deeds of St. Louis County, by which Joe and Caterina Campise conveyed the property involved herein to Harry Roth, who was their attorney.

January 9, 1930, is the date on the note and deed of trust executed by Roth to defendant here, describing the property in question.

January 11, 1930, plaintiff filed in the office of the circuit clerk of St. Louis County, Missouri, a transcript of the judgment previously obtained in the justice of the peace court against the Campises.

January 14, 1930, is the date of a check for $1395 given by defendant to Roth, claimed to be the consideration of the trust deed.

March 24, 1930, a deed dated March 21, 1930, from Roth to Nettie Fischmann (his wife's sister), for the land involved herein was recorded in St. Louis County.

May 13, 1930, plaintiff filed a suit in the Circuit Court of St. Louis County against Roth and his grantee, and the Campises to revest the title to the property in question in the Campises. (Defendant was not a party to this suit and there was nothing then on record to show he had any interest in the land.)

July 9, 1930, the note secured by the trust deed became due.

July to November, 1930, defendant was on a trip to Germany.

November 20, 1930, defendant recorded the deed of trust made by Roth, dated January 9, 1930.

January 14, 1931, trial was had and decree entered in the suit plaintiff had brought to revest the title to the property in the Campises, and the title was revested by such decree in the Campises.

May 20, 1931, plaintiff had levy made under execution to sell the land herein involved to pay his Justice of the Peace judgment against the Campises.

June 15, 1931, plaintiff purchased the property in question at a sale under the execution levied May 20, 1931, on the judgment, the transcript of which had been filed January 11, 1930.

August 27, 1931, respondent instituted the present suit, and shortly thereafter obtained a temporary restraining order preventing defendant from acting under or transferring the note and trust deed.

The trust deed was not filed for record until November 20, 1930, but was dated and acknowledged January 9, 1930. The evidence that it actually was signed and acknowledged on that date is not positive and unequivocal. The notary who took the acknowledgment said:

"I usually keep a record of acknowledgments. In my book in which I kept records at that time I do not think there is a record of this acknowledgment. . . . I did not find a record of that particular acknowledgment. . . . The only part of that instrument I recognize in my handwriting is my name here . . . and then where it says 'my term expires November 21, 1931 . . . Q. You did not write that date in there? A. No, I did not. Q. And his signature and everything else was on it at the time it was presented to you? A. I don't recall whether it was on there before he came into my office or not, or whether he wrote it out there."

The trust deed was signed only by Roth, although he was married at the time, and the acknowledgment showed that he did not acknowledge it as single and unmarried. The note was for $1500 with interest at 6 per cent and was due six months after date, dated January 9, 1930. It was shown that no check of such date or amount was ever written on defendant's bank account. Defendant did pro-

duce a check for $1395, dated January 14, 1930, and defendant claimed that the difference of $105 was due to the fact that he discounted the note seven per cent as additional compensation for making the loan. (Which would make it usurious.) This check was paid by a cashier's check of the bank on which it was drawn payable to another bank; the words "pay in cashier check" being written on the back of the check. Although the note became due in July, defendant went to Germany in July or August and did not return until November, without making any effort to collect the note or even recording this past-due trust deed before he left. He said that, after the deed was delivered to him, he went with Roth to the recorder's office at Clayton for the purpose of looking at the record books to see if the property was clear before he made the loan, and that, after looking at them in his presence, Roth told him it was clear. Defendant came to this country from Germany in 1923 and had been engaged in the meat packing business in St. Louis since 1924. Roth had represented him as his attorney. He rented his business property from the father of Roth's wife but claimed that he did not know Roth was married. Defendant said that he put the trust deed on record in November, 1930, because after his return from Germany he found that Roth had left St. Louis. He said he did not record it sooner because he trusted Roth. Defendant said, in a deposition taken before the trial, that he gave Roth the check and went with him to the recorder's office in July, 1930. He later corrected this statement, saying he "was figuring wrong."

Plaintiff, of course, had the burden of proof of fraud. [Farmers & Merchants Bank v. Funk, 338 Mo. 508, 92 S. W. (2d) 587.] However, in ruling the sufficiency of the evidence, we must consider it in the light most favorable to plaintiff and, of course, fraud may, like any other fact, be established by circumstantial evidence. [Munford v. Sheldon, 320 Mo. 1077, 9 S. W. (2d) 907; Klauber v. Schloss, 198 Mo. 502, 95 S. W. 930; New England Loan & Trust Co. v. Browne, 177 Mo. 412, 76 S. W. 954; Hoeller v. Haffner, 155 Mo. 589, 56 S. W. 312; Martin v. Estes, 132 Mo. 402, 28 S. W. 65, 132 Mo. 402, 34 S. W. 53.] Actions sometimes speak louder than words and acts are circumstances to be considered. Nevertheless, fraud must be a reasonable inference from the circumstances and not a mere suspicion because where facts comport as well with honesty as with fraud the transaction will be held as honest. [Black v. Epstein, 221 Mo. 286, 120 S. W. 754; Waddingham's Executors v. Loker, 44 Mo. 132, 100 Am. Dec. 260.] There are certain circumstances which have come to be "recognized indicia or badges of fraud. . . . None of these things alone prove fraud, but they do warrant an inference of fraud, especially where there is a concurrence of . . . many of these badges." [Hendrix v. Goldman (Mo.), 92 S. W. (2d) 733.] Some of the badges of fraud

which might be found from the evidence here are: Transactions different from the usual method of doing business, confidential or close relationship of the parties, transfers just before suit and steps toward execution, withholding of conveyance from record, incorrect statements as to consideration or amount secured, and fictitious consideration in whole or in part. [27 C. J. 483, secs. 133-156; 12 R. C. L. 476, secs. 10-22.] The fact that some of these circumstances, which may be badges of fraud from defendants' evidence does not prevent them from being substantial evidence. "There is nothing in the law counter to the Biblical admonition, 'By thy words thou shalt be condemned.' Matt. XII, 37." [Smith v. Ohio Millers' Mut. Fire Ins. Co., 320 Mo. 146, 6 S. W. (2d) 920, l. c. 928.] This is peculiarly applicable in fraud cases where sometimes the most convincing evidence of fraud comes into the record by taking the deposition of the adverse party under the rules applicable to cross-examination. It is for the trial chancellor to weigh the evidence coming from a party as well as from other witnesses and he is in a particularly advantageous position to do so.

In this case, it would be fraudulent for defendant to become a party to a deed of trust without consideration, or with a consideration fictitious in substantial part, for the purpose of aiding the Campises to defeat their creditors. We hold that there was substantial evidence to warrant a finding by the chancellor that this was the true fact of the transaction. The court did not have to believe that a check of a different date and amount was the consideration for it, in view of the lack of concern of defendant about who signed the trust deed and about recording or collecting it. Defendant's counsel relies upon Hurley v. Taylor, 78 Mo. 238, but there the good faith of the mortgagee was apparent. It could not be questioned that he loaned the full amount of the principal of the note secured because it was shown what the mortgagor did with the money. [For a case where money was not accounted for see George v. Surkamp, 336 Mo. 1, 76 S. W. (2d) 368.] It is claimed that defendant here did not know the necessity of recording his trust deed. The court had the right to consider the fact that he said he did know it to be necessary to go to the recorder's office, to find out if the land was clear, when he first got the trust deed. He was intelligent enough to conduct an independent business and the chancellor had full opportunity to observe his appearance and intelligence. The court also could reasonably draw unfavorable inferences from the fact that the trust deed to defendant, dated before filing of the transcript of judgment and its appearance on record after commencement of suit to set aside the other conveyances, completed a remarkable chain of coincidences, in which conveyances dated just before steps toward collection of plaintiff's demand against the Campises, were filed immediately thereafter; and in

which each conveyance further removed from plaintiff's reach, after each move he made to reach it, what was apparently the only property that could be subjected to payment of his judgment debt. Our conclusion is that there was evidence of fraud to weigh and that the order granting a new trial on the ground that its first finding was against the weight of the evidence should be sustained.

The order is affirmed and the cause remanded. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur.