[No. 27529.   *En Banc.*   March 29, 1940.]

LOUISE SPEER *et al., Appellants,* v. C. K. STEWART *et al., Respondents.*[1]

[1]Reported in 100 P. (2d) 404.

*Williams & Totten,* for appellants.

*Preston, Thorgrimson & Turner* and *Gordon Eveland,* for respondents.

ROBINSON, J.—This is an action to set aside an alleged fraudulent conveyance.

On February 29, 1936, the appellants were seriously injured in a collision with an automobile driven by C. K. Stewart. On May 6, 1937, they recovered judgments against Stewart and wife, aggregating $9,287, and costs. Executions were returned, unsatisfied. In due course, it was discovered that a deed from C. K. Stewart and wife, purporting to convey twenty lots and an undivided one-fourth interest in ten other lots on Mercer island to their son, Malcolm L. Stewart, had been filed and recorded in the office of the auditor of King county on March 21, 1936, three weeks after the collision. Some of these lots were improved, and to some there were appurtenant shore-lands. The conveyance covered all the real estate of the grantors, including their home, and the value of all of the property conveyed is conceded to be at least fifteen thousand dollars.

At the time the deed was filed for record, although the appellants had not yet brought suit, and did not recover their judgments until May, 1937, the appellants were creditors of C. K. Stewart and wife, according to the rule applied in *Johnson v. Blomdahl,* 90 Wash. 625, 156 Pac. 561:

"This court has held that the term 'creditor' not only includes the holder of a certain and fixed present debt, but every one having a right to damages capable of

judicial enforcement, whether growing out of tort or contract."

■■ But the deed—and this is the pivotal circumstance in the case—purported to have been made on June 27, 1935, more than eight months before the appellants became creditors. The certificate of acknowledgment is as follows:

"STATE OF WASHINGTON ⎰ ss.
"COUNTY OF SNOHOMISH ⎱

"I, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, do hereby certify that on this 27th day of June, 1935, personally appeared before me CHARLES K. STEWART and ALICE B. STEWART, his wife, to me known to be the individuals described in and who executed the foregoing instrument and acknowledged to me that they signed and executed the same as and for their free and voluntary act and deed and for the uses and purposes therein mentioned.

"Given under my hand and official seal the day and year first above herein written.

(Signed)  WALTER L. SHAW
Notary Public in and for the State
(Notarial Seal)  of Washington, residing at Everett."

This certificate of acknowledgment complies in every particular with the specifications and requirements of Rem. Rev. Stat., § 10564, and § 10565 [P. C. § 1908-26] provides:

"Such certificate shall be prima facie evidence of the facts therein recited."

In this action, the plaintiffs alleged, among other things, that:

". . . said deed bears date of June 27, 1935, as being executed and acknowledged by said Charles K. Stewart and Alice B. Stewart, defendants herein, whereas in truth and in fact the same was not executed until after the plaintiffs were injured as aforesaid, and was then executed by said defendants in an-

ticipation of the plaintiffs, and each of them, obtaining said judgments against said defendants, as each of the defendants well knew; that said deed was never acknowledged before a notary public by the said C. K. Stewart and his said wife Alice B. Stewart, although it purports to be so acknowledged by the certificate of Walter L. Shaw, a Notary Public in and for the State of Washington, residing at Everett, Washington, attached thereto; . . ."

It was vitally necessary for the plaintiffs to establish these or equivalent allegations in order to bring into play the ordinary "badges of fraud." Let us suppose that a seventy-year old couple, long resident in Seattle, have an automobile collision in which the occupants of the other car are seriously injured. Three weeks after the accident, they deed all their property to their only son, a permanent resident of San Francisco, and the parties coincidentally enter into, and acknowledge before a notary, an agreement that the son shall, during the balance of their lives, furnish them with all the necessities of life. The old couple remain in possession. The injured parties bring suit against them, recover a judgment, and attack the conveyance as fraudulent.

In such a case, the plaintiffs could plausibly urge that a number of badges of fraud inhered in the transaction. The conveyance was made in anticipation of the damage suit. It was made to a relative, an only son, who, living at a distance, was not in a very good position to perform his part of the agreement, and the old people continued in possession just the same as before. These and other circumstances would warrant an inference of fraud. But, if the transaction took place at a time when the old couple had no creditors, and eight months before the automobile collision, such circumstance would in no way constitute badges of fraud, or warrant an inference of fraud, because such

transactions between old people and a relative, and sometimes even with a total stranger, are consistent with honesty and good faith, and of frequent occurrence.

Furthermore, it is said in *Wiggins v. Shaw*, 99 Wash. 408, 169 Pac. 853, a case in which a daughter's conveyance to her mother was attacked as fraudulent:

"It is little short of inconceivable that Nancy Shaw should convey this property to her mother for the purpose of defrauding a creditor to become such in the future growing out of damages as the result of defamatory words she was to utter over two months after the making of the conveyance."

And so, here, if the conveyance was, in fact, made in June, 1935, it is little short of inconceivable that the Stewarts should have conveyed the property to their son for the purpose of defrauding a creditor to become such in the future growing out of damages as the result of an automobile collision which they were to participate in over eight months after making the conveyance.

The appellants opened their case by calling Malcolm L. Stewart as an adverse witness. He identified the deed and the collateral support agreement in which he purported, in consideration of the deed, to agree to furnish his parents with all the necessities of life during the balance of their respective lives, and the instruments were introduced in evidence. He further testified that the deed and contract were executed at Everett on the date which they bore. His father and mother were called and testified to the same effect. Each of these witnesses was subjected to a thoroughgoing cross-examination. All of them were contradicted, as to collateral matters, by disinterested witnesses. Stewart, Sr., testified falsely as to the payment of certain taxes, although it is evident that the trial

judge thought, for reasons stated in the record, that he did not do so intentionally.

Appellants claim that all three of the Stewarts were so thoroughly impeached that no part of their testimony should receive credit. The trial judge, who was in a better position than we are to judge of that matter, was not of that opinion. Nor are we. But, in order to avoid a long and tedious analysis of the evidence, we will, in reaching our decision, wholly disregard the testimony given by the Stewarts, and particularly that in which they testified that they executed the instruments and made the transaction on June 27, 1935. There is other evidence to that effect to which our statute law requires us to give credit. We mean the deed and the contract, to each of which is attached a duly executed certificate of acknowledgment before Walter L. Shaw, a notary public. The statute says (Rem. Rev. Stat., § 10565) that these certificates are *prima facie* evidence of the facts therein recorded. Each of them reads, in part, as follows:

" . . . *that on this 27th day of June, 1935,* personally appeared before me Charles K. Stewart and Alice B. Stewart, his wife, [and in the case of the contract, Malcolm L. Stewart also], to me known to be the individuals described in and who executed the foregoing instrument etc." (Italics ours.)

There is no evidence to the contrary. Upon the state of the record, when plaintiffs rested and defendants demurred to the evidence and moved to dismiss, the court was literally compelled by the statute to find that the conveyance which it was sought to set aside was executed more than eight months prior to the collision in which the appellants received their injuries, and, consequently, that the plaintiffs were subsequent creditors. The rule as to the quantum of proof, where subsequent creditors are suing to set aside a convey-

ance as fraudulent, is stated in *Wiggins v. Shaw, supra,* as follows:

"There can be such a thing as a conveyance being void as to subsequent creditors because of being made with intent on the part of the grantor and grantee to defraud such creditors (12 R. C. L. 495), but *to set aside such a conveyance on that ground, there must be proof of intent to defraud subsequent creditors, of the most positive and convincing character,* and that the intent to so defraud must exist on the part of both the grantor and the grantee." (Italics ours.)

There is no evidence in the record even remotely approaching the requirement above italicized. The defendants' challenge to the sufficiency of the evidence and motion to dismiss were properly granted.

■ It is urged, however, that plaintiffs' motion for new trial should have been granted, and in a reply brief, filed some days after the oral argument, particular attention is called to an affidavit filed in support of the motion. Omitting the formal parts, this affidavit is as follows:

"S. B. Williams, being first duly sworn upon his oath deposes and says:

"That he is one of the attorneys for the plaintiffs in the above entitled cause; that on or about the 1st day of December, 1937, at Seattle, Washington, he placed a long distance telephone call with the Pacific Telephone and Telegraph Company, for Walter L. Shaw, at Everett, Washington; that said Walter L. Shaw answered the telephone call, stated that his name was such, and that he was a notary public at Everett in the Wisconsin Building; that during the course of said telephone conversation said Walter L. Shaw further stated that he did not know C. K. Stewart or his wife Alice B. Stewart, and that instruments and papers to be notarized by him from attorney Gordon Eveland's office at Everett or for said Gordon Eveland were ordinarily brought into his office, shoved under the window, and that he notarized the same, without paying any atten-

tion to the date such instruments bore, who signed the same or anything else about them; that he had no recollection of notarizing a deed signed by Charles K. Stewart and Alice B. Stewart bearing date of June 27, 1935.

"That affiant, a short while after said telephone call, and on said 1st day of December, 1938 [evidently 1937], placed a second long distance telephone call at Seattle, Washington, for said Walter L. Shaw, at Everett, Washington; that said Walter L. Shaw again answered the telephone, stating that such was his name, and that he was a notary public, and again told affiant in effect the same thing as he did during said first telephone conversation hereinbefore referred to; that affiant had the two plaintiffs and his ex-stenographer Miss Louise Lyford, of Seattle, Washington, each listening in, on separate though connected telephones to said second telephone conversation, and that each of them will testify in effect that said Walter L. Shaw stated in said second telephone conversation, what affiant has hereinbefore set forth said Walter L. Shaw then and there stated.

"That at Everett, Washington, on or about the 6th day of January, 1938, said Walter L. Shaw, confirmed said telephone conversations and the contents thereof to the affiant in person. That, however, when affiant took said Walter L. Shaw's deposition at Everett during the month of July, 1938, he largely repudiated what he said in said telephone conversations."

Since the trial was had in October, 1938, this is, clearly, not newly discovered evidence. Furthermore, Miss Lyford, and one of the plaintiffs at least, testified at the trial and were available, and, as we understand the record, the notary Shaw was also present. We quote from the statement of facts:

"MR. WILLIAMS: I believe before I proceed further in the case, that I will call Mr. Shaw to the stand. I have talked to him, and he has said that he would testify to the truth in this case. MR. PRESTON: Are you calling him? MR. WILLIAMS: I don't believe I will call him at this time, because I am very dubious as

to his testimony. I would much prefer that the defendants call him, and then I can impeach his testimony. But if I call him and make him my witness, I would like the privilege of impeaching his testimony, of course, if I am surprised by it, as to what he has heretofore told me."

As his adversary did not offer to accede to that proposal, plaintiffs' counsel finally said: "I don't believe I will call him," and he rested without doing so.

It seems more than doubtful whether the notary's testimony would be of any advantage to the appellants, even if our procedural statutes authorized the granting of a new trial on the showing made. According to the last paragraph of their counsel's affidavit, Shaw has already repudiated, under oath, the previous statements therein ascribed to him.

The judgment appealed from is affirmed.

MAIN, BEALS, GERAGHTY, STEINERT, SIMPSON, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—I dissent. The respondents should, at least, be put to their proof. There are so many badges of fraud that challenge the integrity of the deed that it is doubtful whether the conveyance could be upheld even with the supporting testimony of the notary. 24 Am. Jur. 174-185. *Castorina v. Herrmann,* 340 Mo. 1026, 104 S. W. (2d) 297.

MILLARD, J., concurs with BLAKE, C. J.