## THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, A Corporation, Appellant, v. WILLIAM GUSEMAN, Respondent.

Springfield Court of Appeals, December 14, 1914.

VENDOR AND VENDEE: Real Estate: Contract of Sale: Fraud of Vendor's Agent: Rescission by Purchaser. Action in ejectment. Defendant asked to have his contract of purchase of certain real estate canceled because of alleged fraud on the part of the plaintiff's agent and prayed for damages. A judgment awarding damages to defendant is reversed with directions to enter judgment for plaintiff. (FARRINGTON, J. Dissenting.)

Appeal from Stoddard County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED (*with directions*).

*Wammack & Welborn* for appellant.

(1) The respondent visited and inspected the land and there is no testimony that he was in any way

hindered from making as extensive an investigation of it as he desired. Under the circumstances he cannot allege that he was defrauded. Morse v. Rathburn, 49 Mo. 91; Judd v. Walker, 215 Mo. 337; McFarland v. Carver, 34 Mo. 195; Dunn v. White, 63 Mo. 181; Wade v. Ringo, 122 Mo. 322; Bradford et al. v. Wright, 145 Mo. App. 623; Holland v. Anderson, 38 Mo. 55; Ordway v. Ins. Co., 35 Mo. App. 434; Slaughter, Adm. v. Gerson, 13 Wallace, 379. (2) Mere expressions of opinion of trade talk do not constitute fraud. Nor do mere loose talk and brag about the value of property. Franklin v. Holle, 7 Mo. App. 245; Anderson v. McPike, 86 Mo. 300; Chase v. Rusk, 90 Mo. App. 29. (3) A broker who takes an option to purchase real estate at a stated price is not the agent of the owner for making the sale. Benedict v. Pell, 70 N. Y. App. Div. 74, N. Y. Supp. 1085; Dilworth v. Bostwick, 1 Sweeny 581; Southack v. Land, 23 Misc. 515, 52 N. Y. Supp. 687.

*Mozley & Woody, Fort & Green,* and *K. C. Spence* for respondent.

(1) Respondent, not being acquainted with the soil, and the character thereof, of the locality of the land sold to him, is not precluded from recovery by the mere fact that he made a casual examination of this particular land. Williamson v. Harris, 167 Mo. App. 347, 151 S. W. 500; Hindes v. Royce, 127 Mo. App. 718, 106 S. W. 1091; Adams v. Barber, 157 Mo. App. 370, 139 S. W. 497; Brownlee v. Hewitt, 1 Mo. App. 360; Stonemets v. Head, 248 Mo. 243, 154 S. W. 108; Judd v. Walker, 215 Mo. 312, 114 S. W. 979. (2) The representations contained in the circulars given by respondent by the Illinois & Texas Land Company, and the representations made to him by E. R. Bartlett, agent of appellant, were representations of facts, and not mere expressions of opinion. Stonemets v. Head, supra; Chase v. Rusk, 90 Mo. App. 25; Cahn v. Reid,

18 Mo. App. 115; Stones v. Richmond, 21 Mo. App. 17; Adams v. Barber, supra; Williamson v. Harris, supra. (3) The Illinois & Texas Land Company, which, so far as this record discloses, was E. R. Bartlett, is clearly shown to have been the agent of appellant in the sale of this land to respondent. The sale was reported to Wm. Collins, appellant's agent for all its lands in Missouri, he received the purchase money paid, and all negotiations concerning this transaction were had with him acting for appellant. Appellant is chargeable with the fraud of said land company, or Bartlett, even though it did not know of the fraud, and did not participate in it. Appellant ratified the contract made, and, by such ratification, made the land company, or E. R. Bartlett, its agent, from the inception of the transaction. Clydesdale Horse Co. v. Bennett, 52 Mo. App. 333; Porter v. Woods, 138 Mo. 552, 39 S. W. 797; Case v. Company, 138 Pac. 167; Wilson v. McCarthy, 134 Pac. 1189; Green v. Waddington, 103 N. E. 964; Taylor v. Bank, 174 N. Y. 181; Porter v. O'Donnell, 130 Pac. 393; Mundorff v. Wilkershaw, 53 Pa. 89, 3 Am. 531; Kirkpatrick v. Pease, 202 Mo. 471, 101 S. W. 651; Wann v. Scullin, 235 Mo. 629, 139 S. W. 425; Judd v. Walker, 215 Mo. 312, 114 S. W. 979.

ROBERTSON, P. J.—This is an action in ejectment. Defendant answered with a general denial and a plea of fraud and deceit in the sale of the land involved, forty acres in Stoddard county, and asks judgment for damages in the sum of five hundred fifty-one dollars and fifty cents which he sought to have declared a lien on the land with an injunction against plaintiff interfering with his possession until said sum was paid. The court and defendant, over plaintiff's objection, treated the defense in the nature of an action in equity, but as defendant is entitled to no relief either in law or equity, plaintiff is not prejudiced on

this point. The judge called a jury to pass on certain issues of fact. The jury responded to the interroga- tories after which judgment was entered for the plain- tiff for the possession of the land, one hundred dollars damages and finding the monthly value of the rents and profits of the land to be five dollars. The finding for defendant was that he had been damaged in the sum of five hundred dollars and seventy-five cents, for which, less the one hundred dollars, judgment was entered in his behalf. The plaintiff has appealed.

The plaintiff was the owner of many thousand of acres of land in Stoddard county which it acquired as the result of loans and was endeavoring to sell it. It had spent large sums on building roads, residences and encouraged the construction of extensive drainage sys- tems for which, of course, its land was taxed. In its efforts to dispose of this land it had printed for dis- tribution advertising folders setting forth in fulsome language the advantages and possibilities of this local- ity. One E. R. Bartlett, a real estate dealer located at Springfield, Illinois and operating under the name of the Illinois & Texas Land Company undertook the sale of the land here involved.

The plaintiff held a deed of trust on the land as a result of the sale to one Rich. Default having been made by Rich the plaintiff was offering to sell the prop- erty. Bartlett called defendant's attention to it, who, with Bartlett ,visited the land and afterwards entered into a contract under date of February 20, 1912, with the Illinois & Texas Land Company, to buy it for two thousand dollars, paying two hundred and fifty dollars cash and the balance in deferred payments. The de- fendant understood that the title to the land was not vested in Bartlett or his company and there was writ- ten on the back of the contract the following:

"By agreement $12 is to be allowed Second Party as a credit out of the $1750 at the time of closing deal

for his railroad fares paid at time of going to examine the land before purchasing.

"It is understood and agreed that the land herein is to be conveyed clear of all Mortgage or Liens except the $1750 due from the Second Party, and in case of failure the First Party to so convey within thirty days from date of payment of earnest money, then the second party may elect to have his $250 earnest money returned to him and cancel contract." The defendant inquired of other parties about this land before buying. He was about thirty-three years of age, a farmer, and when he visited the land also examined several other tracts, but selected this one. He moved onto the land April 3, 1912, and later his attorney wrote Bartlett the following letter which defendant signed and delivered, as he testified, by "sending" it to Bartlett, but which Bartlett testified was handed to him by defendant August 7:

"Dudley, Mo., July 23, 1912.

To The Illinois & Texas Land Company.

"E. R. Bartlett, President.

"You are hereby notified that I have cancelled and do hereby cancel the contract entered into with you on the 20th day of February, 1912, for the purpose of the northwest quarter of the southwest quarter of section thirty-two (32) in township twenty-six (26) range nine (9), containing forty (40) acres, at fifty (50) dollars per acre a total of $2000. $250 cash in earnest money. The balance of $1750 payable in ten years. $175 the first January of each year and every year until paid in full, deferred payments to bear five per cent per annum.

"Upon the execution of said contract written and signed in triplicate of which you have two copies, which said earnest money was duly paid on said February 20, 1912. At which time you undertook and agreed to convey said land or cause to be conveyed said land by good and sufficient warranty deed within thirty days

from the date of payment of said earnest money, $250. And in failure to do so then I the second party, might elect to have and received his said $250 earnest money, return to him and cancel the contract. Which said contract you have forfeited and have wholly failed to execute and perform on your part to the injury and damages of the said party of the second part in this: Party of the second part moved from the State of Illinois to take said land and carry out his contract in that behalf at a cost of $78.50, and has cleared three acres of land on said premises, reasonable worth $4.50 per acre and the rent for the present year making a total sum of $92. And deduct therefrom the rent of the cleared land on said premises, twenty acres at $2.50 per acre total $50, leaving a balance of $42 due this party of the second part in addition to said $250 earnest money and interest thereon at the rate of six per cent per annum. All of which this party of the second part demands immediate payment. Party of the second part agrees to quit possession of said premises on or before the 31st day of Dec., 1912. and yield peaceable possession to party of the first part. Witness my signature on this the day and date first above written.

"WILLIAM GUSEMAN."

After writing this letter defendant continued to reside on the land, cleared some of it of timber and continued to make improvements thereon, for the value of which he is seeking to recover in this case. He also, after his attempted forfeiture, sowed wheat on the land. Before this letter was written or delivered defendant knew plaintiff was having some trouble in getting matters adjusted with Rich, but before this letter was written the plaintiff made and tendered a deed to defendant which defendant was advised he could get upon executing the deed of trust for the deferred payments as provided for in the contract, with some slight variation as to payments to which defend-

186MoApp16

ant did not object. Under date of October 23, 1912, defendant wrote to a party offering to sell the land at fifty-five dollars an acre, stating that by doing so he could save the prospective purchaser three hundred dollars. The testimony of witnesses fixed the value of the land at the date of trial from ten to seventy dollars per acre. At the latter figure one witness testified that he bought land similar to that contracted for by defendant. Bartlett first negotiated with Rich for the purchase of the land who asked forty-two dollars and fifty cents per acre, and that was the price for which Bartlett was getting it from plaintiff. This land is located between two drainage ditches. Bartlett testified, and defendant did not deny it ,that he offered defendant a profit of $2.50 an acre for the land, which defendant refused.

To relate all of the acts of fraud charged against plaintiff as the result of Bartlett's conduct would require too much space, but conceding for the purpose of this opinion that plaintiff is responsible for all Bartlett did and said, we can give no clearer idea of the fraud charged than to quote from respondent's brief wherein the matters relied on here are condensed thus:

"The testimony shows that appellant advertised its lands, of which the lands in controversy had been, and was a part, as the richest soil on earth, twenty to eighty feet deep and exhaustless in fertility; that it was supplied with pure water; that it was high, well-drained bottom land, and, in fact, the cream of the continent; that it was the land of promise and fulfillment; that it was the land of big bargains and bigger crops; that the land produced two crops yearly, and sometimes more; that it was the best farm proposition ever offered to a farmer, renter or investor; that it would yield yearly fifteen to twenty-five per cent profit in crops, and the like amount in advanced values, with no risk to the purchaser, that for every dollar the pur-

chaser invested, it would loan him three at five per cent only, and guarantee his title; that the purchaser would thus be able to read twenty-five to forty per cent profit on every four dollars, or better than 100 per cent on his actual investment, and that if the purchaser was a home builder he could pay for his lands from the crops thereon; that the natural drainage of said land was unusually good, the water passing easily quickly down in case of heavy rainfall, and that all the strata were sufficienty fine to bring up water by capillary attraction when it was needed, and that the climatic conditions, and pure water, made it truly a land of health, good alike for man, beast and crops.''

As to the alleged misrepresentation that the land was supplied with pure water the following occurred in the trial, which is a specimen of the disposition that prevails throughout the case on defendant's part: "Q. What, if anything did Bartlett say to you about the supply of pure water on this forty acres of land? A. He said it was the best that could be got. Q. What was the truth about it? A. Well, the deep wells—. Q. First, how did you get water?'' Then the testimony goes off into the method of driving down pipes to get surface water, which, of course, was not good. The adroit interruption of the witness when he was about to proceed to show that there was a good run of water convinces me that there is nothing in this charge.

While the representations of plaintiff and Bartlett of this land was not what appeals to the conscience of every man as a commendable method of attracting attention to salable lands, yet in the absence of the wicked design to defraud I am convinced that there is no authority to hold them liable for fraud or deceit. [Wilson v. Jackson, 167 Mo. 135, 66 S. W. 972; Adams v. Barber, 157 Mo. App. 370, 392 and 393, 139 S. W. 489; South Missouri Pine Lumber Company v. Crommer, 202 Mo. 504, 521, 101 S. W. 22; Kilpatric v. Wyler, 197 Mo. 123, 159 and 160, 95 S. W. 213; Brown v. South

Joplin Lead and Zinc Co., 194 Mo. 681, 700, 92 S. W. 699; Cornwall v. McFarland Real Estate Co., 150 Mo. 377, 383, 51 S. W. 736; Peters v. Lohman, 171 Mo. App. 465, 156 S. W. 783.]

The case of Stonemets v. Head, 248 Mo. 243, 154 S. W. 108, relied on by respondents presents an entirely different state of facts than are prevalent here. In that case a wicked design was prominent in every act of the party against whom complaint was made. We cannot find in the case at bar that there was present in the representations of plaintiff or Bartlett any evil intent. A reading of the above cited cases will disclose that the law does not brand as fraudulent the mere "vague laudatory flourishes" of a seller; ordinarily and in this case, representations as to value are mere expressions of opinion, and there is great doubt if the values were over stated. The statements as to probable profits, depth of soil, no risk to purchaser, and like assertions were nothing more than the statement of the opinion of the seller. It is also evident that defendant did not when he had the letter of July 23, 1912, written, consider that he had been swindled, because in that letter he bases his claim on the grounds of the default of Bartlett under the contract of purchase, although Bartlett had offered to comply therewith, with the exception of the variation in the installment notes as above mentioned. And, as before stated, after writing this letter defendant proceeds with the improvements thereon. In the letter he charges for clearing three acres of land and at the trial he testified that twelve acres were cleared; thus he must have cleared nine acres after writing the letter instead of two as he testified at the trial. He proposed to retain possession of the land until December 31, 1912, and to pay as rental for the cleared land from April 3, 1912, to that time $2.50 per acre and this for land, as he testified, worth only ten dollars per acre.

Convinced, as I am, that defendant is entitled to no relief, either at law or in equity, the judgment in his behalf will be reversed and the cause remanded with directions to set aside the judgment as it now stands and to enter one in behalf of plaintiff in the same form and substance and as of the date of the present one and against the defendant on his answer and counterclaim.

*Sturgis, J.,* concurs in result and filed separate opinion. *Farrington, J.,* dissents and files separate opinion.

STURGIS, J.—I concur in the result reached by ROBERTSON, P. J., for these reasons: It is conceded that neither the plaintiff company nor its authorized agent, Collins, authorized, participated in or knew of the alleged fraudulent promises and alleged misrepresentations made by Bartlett in selling the land in question to defendant. It is also conceded that Bartlett was not the authorized agent of this plaintiff to make a sale of this land. Whether he had or had not been the plaintiff's agent in selling other lands is not material. At the time Bartlett sold this land to defendant, the plaintiff was not the owner thereof. The land was then owned by one Rich, though the plaintiff held a deed of trust on the same which it expected to foreclose unless Rich paid the amount secured and plaintiff might or might not become the purchaser there at and thus acquire the title. This is what it did do, but not until sometime after Bartlett had made a contract of sale to the defendant.

Bartlett was a land broker operating under the trade name of the Illinois and Texas Land Company and was looking for lands to buy and sell. He made a contract of sale to defendant in his own name, or rather his trade name. He did not purport to sell the land as agent for another but as his own. At that time he was

expecting to buy it from the then owner, Rich, and had some arrangement or negotiations-at least with Rich to that effect. It may have been and doubtless was his intention, if he could not buy from Rich, to buy at the foreclosure sale under the deed of trust or from plaintiff in case it became the purchaser at such sale. He knew that plaintiff was wanting to sell all of its lands of this character and was in that business and had a practically fixed schedule of prices on such lands and would sell to most anyone offering the price. He knew that, if plaintiff bought back this land under the deed of trust, it would most certainly make a price substantially sufficient to make itself whole. With this knowledge he took chances on making a sale to defendant as if he was the then owner.

After plaintiff did acquire the property, it refused to carry out the terms of sale made by Bartlett to defendant as it had a right to do. It would do nothing more than agree to sell to Bartlett on the terms fixed by itself. "It is not true that an owner may not declare his price to whom he will, without the hazard of paying commissions to (that is making agents of) those who volunteer, unasked, to send him a purchaser on his own terms." [Benedict v. Pell, 74 N. Y. Supp. 1085, quoting from Pierce v. Thomas, 4 E. D. Smith, 354.] The fact, therefore, that plaintiff was willing to and did sometime later execute and offer a deed on the terms fixed by itself to the defendant, as a purchaser found by Bartlett, did not make Bartlett its agent. The fact that an owner of land in agreeing to sell to another on his own terms also agrees to and does make a deed to any third party designated by such purchaser does not make such purchaser the agent of the owner for the purpose of selling to the party receiving the deed.

In this case Bartlett had agreed with defendant to sell him the land on one cash and nine annual payments, while plaintiff would sell to Bartlett only on one cash and seven annual payments and with the payments

bearing a different rate of interest. Bartlett had sold to defendant at a larger aggregate price than plaintiff was selling to him and, by making the last two payments cover the surplus and be payable to Bartlett for his profits, he sought to make the two contracts the equivalent of each other. Plaintiff was willing to do this so far as it could and preserve its own terms of sale. The defendant went into possession under his purchase from Bartlett and because Bartlett could not and did not comply with his contract of sale to defendant, the defendant repudiated the sale and it was never consummated and no deed passed from plaintiff to either Bartlett or defendant. The plaintiff received the first cash payment due it as coming from Bartlett, which was a less amount than the cash payment made by defendant to Bartlett, and the fact that plaintiff knew that Bartlett was using part of the money received from defendant in paying plaintiff the first cash payment can make no difference.

Under these facts, the rule that one who accepts the benefits of a transaction consummated by an act of an unauthorized agent, or the unauthorized act of a real agent, thereby ratifies it and must accept the burdens and be responsible for the methods and means used by such agent, whether known to the principal or not, has no application here. In order to be a ratification the person acting must have professed at least to have been acting for the person ratifying. If a person avowedly acts for himself and not for another there is no act of agency for such other to ratify. A ratification is an agreement, express or implied, to adopt an act performed by another for the one ratifying it. "It applies only 'where a person acting as agent for another professes, though without authority, to contract for him.'" [Planing Mill Co. v. Brundage, 25 Mo. App. 268, 273.] See also Steinkamper v. McManus, 26 Mo. App. 51, 53. For the same reason one who has an option on land from the owner is not the agent of

such owner in making a sale of the land, though the option agreement includes an agreement that the owner will make a deed to anyone designated by the holder of the option. In such case the holder of the option acts for himself in selling the land and not for the owner. [Southack v. Lane, 52 N. Y. Supp. 687.] In this case Bartlett professed to act for himself in selling this land to defendant and the defendant so contracted with him, and Bartlett was not the plaintiff's agent either in fact or by ratification.

## DISSENTING OPINION.

FARRINGTON, J.—The plaintiff, a foreign corporation, authorized to do business in Missouri, some time prior to February 20, 1912, had sold forty acres of land situate in Stoddard county, in this State, to one Rich, and had taken a deed of trust as security for part of the purchase price. At that time Rich was not in possession of the land but plaintiff had not foreclosed under its deed of trust; however, it was looking for a purchaser for the land when it should perfect title in itself.

The evidence shows that E. R. Bartlett, a real estate broker of Springfield, Illinois, was disposing of lands belonging to plaintiff in southeast Missouri, and that on his negotiations deeds were being made by plaintiff to customers he produced that were willing to make terms of purchase satisfactory to the plaintiff. A few days prior to February 20, 1912, Bartlett took the defendant, an Illinois farmer, to Stoddard county to look over the land. They drove out to the place and were there according to defendant's testimony some ten or fifteen minutes. They returned to Springfield, Illinois, and entered into a contract wherein the Illinois & Texas Land Company (a real estate partnership principally owned and controlled by Bartlet who carried on the negotiations with defendant)

agreed to sell the farm for a consideration of two thousand dollars, and two hundred and fifty dollars of the purchase price was paid at the time, the contract providing for securing the deferred payments. The following provision was in the contract: "By agreement $12 is to be allowed second party as a credit out of the $1750 at the time of closing deal for his railroad fares paid at time of going to examine the land before purchasing. It is understood and agreed that the land herein is to be conveyed clear of all mortgage or liens except the $1750 due from the second party, and in case of failure of first party to so convey within thirty days from date of payment of earnest money, then the second party may elect to have his $250 earnest money returned to him and cancel contract."

On March 26, 1912, defendant, not yet having received a deed, moved from Illinois to the land in Stoddard county. He testified that Bartlett told him at that time that the deed had been slightly delayed but would be forthcoming in a few days, and that acting on this assurance he moved onto the place and commenced work.

On February 23, 1912, three days after the contract was signed, the Illinois & Texas Land Company, by E. R. Bartlett, president, wrote the following letter enclosing the contract he had made with defendant:

"Springfield, Ill.

"Feb. 23, 1912.

"Mr. William Collins or D. C. Steele,

"St. Louis, Mo.

"Dear Sirs: As I wrote you Wednesday, I contracted a sale of the W. F. Rich place to a Mr. William Guseman of Cornland, Ill., but could not get into the bank until today to get the money.

"If I understand you right, Mr. Steele, Mr. Rich has left his deed with you people, that is has turned the place over to you, and you said to sell at $40 net to you which I did.

"I enclose herewith a draft for $185 as first payment, will make $15 more if desired making $200 first payment, and I will take a second mortgage for the balance due me.

"As I spoke to Mr. Collins just before he was taken sick about rearranging the mortgage on this tract to make it five per cent money it will perhaps be best to do so, even if you add in the difference between the five per cent and six per cent to the principal dividing the amount into ten equal payments, but if you prefer to let the old mortgage stand and deed subject to it I can arrange it by making the difference in interest in my second mortgage.

"It might be as well to make the deed direct to me, E. Russell Bartlett, and I will execute the new papers and then deed to Mr. Guseman subject thereto, or if you prefer make them direct to Mr. Guseman.

"If you have an abstract of this tract please send it to me and I will copy and return it, if you have not you had better send and have it made in connection with the J. C. Walker abstract in the same section, this can be done with little extra cost as they will run the same.

"Not knowing which of you I will find in the office I make the draft payable to Mr. Collins,

"Yours respectfully,

"THE ILLINOIS & TEXAS LAND CO.,

"By E. R. BARTLETT, Pres.

"P. S.—I attach copy of my sale contract."

It appears in the evidence that William Collins was the general agent in charge of all the plaintiff's lands in Stoddard county and that Steele was his assistant.

It will be borne in mind that, as this letter disclosed, the net price to the plaintiff was to be forty dollars an acre and the price Guseman was paying to Bartlett was fifty dollars an acre; the difference is the

amount of compensation the agent (Bartlett) received for making the sale.

This letter, as well as the testimony of Collins, shows that he (Collins) received and kept one hundred and eighty-five dollars out of the initial payment of two hundred and fifty dollars.

The plaintiff had some trouble with Rich and could not obtain a deed from him. It foreclosed the Rich deed of trust, buying the land, and afterwards prepared a warranty deed in which the grantee was defendant Guseman and also prepared the deed of trust and notes for Guseman to sign, all of which was carrying out the sale contract made by Bartlett with the defendant.

On July 23, 1912, before any deed had been offered the defendant under the contract, defendant wrote the following letter to the Illinois & Texas Land Company electing to cancel under his contract and asking for a return of the two hundred and fifty dollars with other items therein shown:

"Dudley, Mo., July 23, 1912.

"To the Illinois & Texas Land Company,

"E. R. Bartlett, President.

"You are hereby notified that I have canceled and do hereby cancel the contract entered into with you on the 20th day of February, 1912, for the purchase of the northwest quarter of the southwest quarter of section thirty-two, in township twenty-six, range nine, containing forty acres, at fifty dollars per acre, a total of $2000. $250 cash in earnest money. The balance of $1750 payable in ten years. $175 the first day of January of each year and every year until paid in full, deferred payments to bear five per cent per annum.

"Upon the execution of said contract written and signed in triplicate of which you have two copies, which said earnest money was duly paid on said February 20, 1912. At which time you undertook and agreed to convey said land or cause to be conveyed said land

by good and sufficient warranty deed within thirty days from the date of payment of said earnest money, $250. And in failure to do so then I, the second party, might elect to have and receive his said $250 earnest money, returned to him and cancel the contract. Which said contract you have forfeited and have wholly failed to execute and perform on your part to the injury and damage of the said party of the second part in this: Party of the second part moved from the State of Illinois to take said land and carry out his contract in that behalf at a cost of $78.50, and has cleared three acres of land on said premises, reasonably worth $4.50 per acre and the rent for the present year, making a total sum of $92. And deduct therefrom the rent of the cleared land on said premises, twenty acres at $2.50 per acre, total $50, leaving a balance of $42 due this party of the second part in addition to said $250 earnest money and interest thereon at the rate of six per cent per annum. All of which this party of the second part demands immediate payment. Party of the second part agrees to quit possession of said premises on or before the 31st day of December, 1912, and yield peaceable possession to party of the first part. Witness my signature on this the day and date first above written.

"WILLIAM GUSEMAN."

Some time after this, defendant was offered the deed, heretofore referred to, prepared by plaintiff, which he refused. There is evidence in the record that the deed which plaintiff prepared to convey title to Guseman was kept in its office and not turned over to Bartlett.

The plaintiff, having bought the land under the Rich foreclosure, and the defendant refusing to carry out the contract, this suit in ejectment was instituted.

The defendant in no way disputes plaintiff's title. He was in possession when the suit was brought. His answer set up an equitable counterclaim stating a great

many facts to the effect that plaintiff's agent, Bartlett, misrepresented the facts with reference to this place which misled him to his injury. The view I take of the case requires no discussion of that question. Defendant's answer, after setting up the transaction and the alleged fraud, concludes as follows:

"Defendant avers that after he had been induced as foresaid to make said contract of purchase and to lay out and expend the sums of money aforesaid and to move onto and clear up and improve said land as aforesaid, and as hereinafter set out, plaintiff and its said agent failed and refused to deliver to this defendant an abstract of the title to said land showing a fee simple title in him subject to the balance of the purchase price due plaintiff thereon, and failed and refused to make, execute and deliver to the defendant a warranty deed conveying to him the title in fee to said land, conditioned in accordance with the terms of said contract, as they had represented and agreed they would do whereupon on the 23d day of July, 1912, defendant duly notified plaintiff's said agent of his intention to forfeit said contract of purchase, as he had the right to do under its terms and privisions, and demanded the return to him of said sum of $250, paid to plaintiff as aforesaid, and a compromise sum of his damages in the premises, with the view of avoiding the delay and expense of litigation in court, but defendant says that plaintiff wholly disregarded his reasonable and just demand, refused to repay to defendant said sums or any part thereof and in furtherance of its original designs in attempting to retake from this defendant by this proceeding in ejectment said land, and thus and thereby appropriate defendant's money and the fruits of his toil as aforesaid without recompense to him or cost to them.

"Defendant avers that the sum he has expended and labor he has performed and its value by reason of the premises, are as follows:

Railway fare paid from Cornland, Ill., to Stod-
dard county, Mo., to look at said land....$ 12.00
Paid under the terms of said contract of pur-
chase to plaintiff in cash .............. 250.00
Interest on ·above sum for one year and ten
months at six per cent per annum...... 25.00
To expense of moving from Cornland, Ill., to
Dudley, Mo. ......·................... 73.00
To building thirty rods of woven wire fence on
said land ........................... 15.00
To building one smokehouse on said land...... 15.00
To building one chickenhouse on said land.... 15.00
To building one closet on said land .......... 1.50
To clearing twelve acres of land at $10 per acre, 120.00
To clearing 5 acres of said land at $5 per acre, 25.00

"Making a total of $551.50 due this defendant, and he prays that an accounting be had between he and the plaintiff, and that he recover said sum of $551.50 from said plaintiff, and his costs herein laid out and expended, and that said sum so recovered may be declared a lien on said land and that said plaintiff may be enjoined and restrained from interfering with the possession of said premises until such judgment and costs are paid, and for such other and further and general relief as, in equity and good conscience the court may deem meet and proper."

On reading this record I am convinced (and will not discuss the details) that Bartlet was the representative, agent, or broker of the plaintiff for the purpose of disposing of its lands in Stoddard county, and that although the actual title to this land was not in the plaintiff when the contract was executed, the plaintiff did hold a deed of trust on the land, knew that Rich the owner had defaulted and abandoned the land, and that they were negotiating with him with reference to acquiring a deed from him. Plaintiff did accept Bartlet's trade and finally offered to put it through, and as a result is now suing in ejectment because Guse-

man would not carry out the deal which Bartlett had made with him for plaintiff. Their agent, William Collins, who had full control of the business for plaintiff in Missouri, having been given a general power of attorney to manage and sell lands, received and kept one hundred and eighty-five dollars of the first payment, sent to him by Bartlett together with the contract made with Guseman. This general agent of the plaintiff—Collins—testified that during the year 1910 arrangements were made with Bartlett to sell plaintiff's land in Stoddard county and that the negotiations finally culminated in plaintiff giving Bartlett options to sell the land at certain listed prices. The following excerpt from the testimony of Collins I think clearly shows that Bartett or the Illinois & Texas Land Company was acting as the agent of the plaintiff, and that as a scheme to sell the land they armed Bartlett with options to go out and find customers for plaintiff: "Q. Well, you gave him the option? A. We finally gave him the option to sell these lands at a listed price for certain lands. Q. To sell to whom and from whom? A. To customers he could find. Q. To sell them to any customers he might find, and for whom? A. If you would let me finish the substance of the correspondence— Q. Tell who he was to sell them for? A. For the Company. Q. Now, go ahead and tell what you want to about it? A. That's all. Q. In the correspondence you had with the Illinois & Texas Land Company who were you representing? A. The Connecticut Mutual Life Insurance Company. Q. Mr. Bartlett, in the name of the Illinois & Texas Land Company sold other lands under this arrangement for the Company, did he not? A. Yes, sir."

The evidence justified the conclusion that Bartlett was the agent of the plaintiff and that in making the contract with Guseman on February 20, 1912, he was acting for the plaintiff and that the plaintiff received the major portion of the benefits derived by reason

of that contract on that date. It stands admitted that up to July 23, 1912, plaintiff had not furnished defendant with the deed contracted for. His letter of that date is a clear rescission of the contract on his part and expresses a determination to cancel the contract. This he had a clear right to do under the plain provision of the contract of February 20th; and merely because he had waived a cancelation up to that time would not prevent him from canceling on that date as his delay caused no harm to the plaintiff—plaintiff being responsible for the delay. It was entirely op-. tional with him to cancel at any time after thirty days when the plaintiff failed to carry out its agreement with him and because he did not cancel at the end of the thirty days and because he did go on the farm and give plaintiff a longer time in which to perfect the title and make him a deed are not acts on his part that avail the plaintiff anything. Plaintiff cannot complain because defendant did not require it to strictly comply with the contract. He was on the land, working and improving it, and plaintiff was advised of that fact all the time. His counterclaim, while it does deal with questions of fraud and fraudulent representations and seeks to recover some items on that account, does contain averments enough to give him relief on his cancelation of July 23d. The counterclaim contains items of damage which I do not think are justified in this case. His letter fixing the time of cancelation enumerates his items of damage and what he asks a return of, and to this he must be restricted. A plaintiff in ejectment is not entitled to possession in a case where the defendant went into possession under the plaintiff's chain of title without restoring to defendant his purchase money and the reasonable value of improvements made while in possession. [See, The Hannibal & St. Joseph R. Co. v. Shortridge, 86 Mo. 662; Foote v. Clark, 102 Mo. l. c. 408, 14 S. W. 981; Hutchinson v. Patterson, 226 Mo. l. c. 182, 126 S. W. 403;

Patillo v. Martin, 107 Mo. App. l. c. 659, 83 S. W. 1010;
House v. Marshall, 18 Mo. 368; and State ex rel. Jiner
v. Foard, 251 Mo. l. c. 56, 157 S. W. 619.]

I think defendant is entitled to the two hundred
and fifty dollars earnest money, the seventy-three dol-
lars as shown by his counterclaim for expense of mov-
ing from Illinois to Missouri, and the thirteen dollars
and fifty cents for clearing three acres of land, together
with interest on these amounts to the date of suit, mak-
ing a total of three hundred and sixty-eight dollars.
The plaintiff was given a judgment for restitution and
one hundred dollars damages for rent during the time
defendant held the land. From this judgment defend-
ant does not appeal.

All the other questions raised by appellant, such
as the right to counterclaim in this action, laches, etc.,
were discussed in an opinion of this court handed down
on December 12, 1912, in a case growing out of a sim-
ilar transaction and argued and submitted with this
case, wherein the Connecticut Mutual Life Insurance
Company was appellant and Arthur P. Carson was re-
spondent.

The defendant recovered in the trial court five
hundred dollars and seventy-five cents. I think the
judgment should be affirmed on condition that defend-
ant by a written remittitur reduce the amount of his
judgment so that it will be for three hundred and sixty-
eight dollars, and in the event of his failure so to do,
the judgment should be reversed and the cause re-
manded.